UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

AVERY WHITTLE,

                              Plaintiff,

          -against-

DR. ULLOA, WARDEN VOLLMER,
GRIEVANCE COORD. W. SMILEY AND
N.P. USZYNSKI,

                              Defendants.
----------------------------------------------------------------X

**OPINION AND ORDER**

15 Civ. 08875 (JCM)

       Plaintiff Avery Whittle ("Plaintiff"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against Defendant N.P. Uszynski ("Defendant"). (Docket Nos. 1, 17). Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Motion"). (Docket No. 98). Plaintiff opposed the Motion, (Docket No. 106), and Defendant replied, (Docket No. 108). For the reasons set forth below, the Court grants Defendant's Motion.[1]

## I. BACKGROUND

### A. Procedural Background

       On November 10, 2015, Plaintiff commenced this action against Dr. Raul Ulloa, Captain W. Smiley, Warden Vollmer, and a Jane Doe nurse ("Defendants") alleging that they were deliberately indifferent to his medical needs in violation of his rights under the United States Constitution.[2] (Docket No. 1). Construing Plaintiff's allegations liberally, Plaintiff also alleges

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 72).

[2] At the time of the events raised in the Amended Complaint, Plaintiff was a pre-trial detainee. (Am. Compl., Docket No. 17 at 8). Therefore, his claim will be evaluated under the Fourteenth Amendment. *See Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017).

state law claims of medical malpractice and negligence. (*Id.*). On April 4, 2016, Plaintiff filed an amended complaint ("Amended Complaint") to replace the Jane Doe defendant with N.P. Uszynski as a named defendant. (Docket No. 17). All defendants moved to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Nos. 27, 43). On December 19, 2016, the Court dismissed all of Plaintiff's claims against Dr. Raul Ulloa, Captain W. Smiley, and Warden Vollmer. (Docket No. 60). The Court also dismissed Plaintiff's state law claims against N.P. Uszynski, but denied Defendant's motion to dismiss Plaintiff's Section 1983 claim for deliberate indifference to his medical needs against N.P. Uszynski. (*Id.*).

Following the completion of discovery, Defendant N.P. Uszynski filed a motion for summary judgment, (Docket No. 98), accompanied by a memorandum of law ("Def. Br."), (Docket No. 99), a statement of facts pursuant to Local Civil Rule 56.1 ("Def. 56.1"), (Docket No. 102), and a declaration attaching seventeen exhibits, (Docket No. 101), including: relevant entries of Plaintiff's medical records ("Def. Ex. J"), (Docket No. 101–10), a copy of Plaintiff's deposition transcript ("Whittle Dep."), (Docket No. 101-11), video surveillance footage depicting Plaintiff's interaction with Defendant on December 12, 2014[3] ("Def. Ex. N"), (Docket No. 101–14), an affirmation signed by Doctor Raul Ulloa ("Ulloa Aff."), (Docket No. 101–15), and an affidavit signed by Defendant ("Uszynski Aff."), (Docket No. 101–17). Plaintiff's opposition to Defendant's motion includes a combined memorandum of law and response to Defendant's 56.1 Statement. ("Pl. Br. and 56.1 Resp.") (Docket No. 105). Plaintiff also attached

---

[3] Defendant's declaration incorrectly indicates that the video footage depicts Plaintiff's interaction with Defendant on December 14, 2014. (Docket No. 101 at ¶ 15).

2

a number of exhibits to his opposition,[4] (Docket No. 106), including additional medical records, ("Pl. Ex. E").

**B. Facts**

The following facts are gathered from Defendant's 56.1 Statement, Plaintiff's 56.1 Response, the exhibits attached to the parties' submissions, and the affidavits submitted by the parties in support of their contentions.[5] The facts are construed in the light most favorable to Plaintiff as the non-moving party. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). The facts are not in dispute, unless otherwise noted.

At all relevant times, Plaintiff was a pretrial detainee at Westchester County Jail ("WCJ") in Valhalla, New York. (Am. Compl., Docket No. 17 at 8). Defendant was a nurse practitioner in WCJ responsible for conducting infirmary rounds, recording patients' progress notes, and providing treatment under the supervision of the facility's physicians. (Uszynski Aff. at ¶¶ 3–4). On December 12, 2014, Plaintiff underwent surgery at Mount Vernon Hospital to remove a cyst located on the side of his neck. (Whittle Dep.[6] at 18, 20–21); (Def. Ex. J at 6–7). Doctor Aaron Roth performed the surgery, sutured the wound, and wrote discharge treatment instructions. (Whittle Dep. at 30–31); (Def. Ex. J at 7). Doctor Roth's discharge instructions noted that the dressing covering the wound should not be changed for 24 hours following surgery, then changed daily with Bacitracin[7] applied to the wound. (Def. Ex. J at 7); (Ulloa Aff. at 6). The

---

[4] Plaintiff appears to have written notations on several of the attached exhibits. (*See, e.g.*, Docket No 106-1 at 5). In an abundance of caution, the Court will consider these notations as part of Plaintiff's opposition to Defendant's Motion. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants."); *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (affirming "well-worn precedent concerning a district court's obligation to liberally construe pro se submissions.").

[5] All page number citations to the record refer to the ECF page number unless otherwise noted.

[6] Page number citations to Plaintiff's deposition refer to the deposition page rather than the ECF page number.

[7] Doctor Roth's records spell Bacitracin as "baciraxcin." (Def. Ex. J at 7); (Ulloa Aff. at 6).

3

instructions also stated that Plaintiff should take Bactrim, an oral antibiotic, twice per day for seven days, and that he should not shower for 48 hours after the surgery. (*Id.*). Doctor Roth gave Plaintiff's discharge instructions to correction officers to be brought back to WCJ upon Plaintiff's discharge from the hospital. (Whittle Dep. at 32–33).

Plaintiff was discharged from Mount Vernon Hospital on December 12, 2014 at approximately 6:05 p.m., (Def. Ex. J at 12), and transported to the medical unit within WCJ, (Whittle Dep. at 30). Upon arrival, a nurse, who was not Defendant, escorted Plaintiff to a bed, took his vital signs, and gave him something to eat. (*Id.* at 32). Surveillance video of the medical unit shows that later that evening Plaintiff was escorted to a hallway chair by a male officer at 7:30 p.m.[8] (Def. Ex. N). The video depicts Plaintiff with a post-operative white dressing covering the posterior and lateral sides of his neck. (*Id.*). At 8:04 p.m., Defendant approached Plaintiff and appears to briefly examine Plaintiff's dressing before walking away. (*Id.*). The video does not depict Defendant removing the dressing. (*Id.*). At 8:10 p.m., Defendant returned and appears to speak with Plaintiff, who remained seated in the chair. (*Id.*). At this point, Defendant observed that the dressing was clean, dry and intact. (Uszynski Aff. at ¶ 5). Defendant did not touch or remove Plaintiff's dressing. (Ex. N). At 8:16 p.m., Defendant and a correction officer approached Plaintiff. (*Id.*). Because Plaintiff complained of pain in his lower extremities, Defendant examined him for signs of deep vein thrombosis ("DVT"). (Ex. N); (Uszynski Aff. at ¶ 5). Defendant noted that Plaintiff's blood pressure was elevated and ordered a re-check at

---

[8] Plaintiff claims that issues of fact exist as to whether the surveillance video was altered. (Pl. Br. and 56.1 Resp. at 9). However, Plaintiff fails to present any evidence challenging the accuracy of the video other than his own self-serving statements. Accordingly, where the surveillance video clearly contradicts Plaintiff's version of events, the Court credits the surveillance footage over Plaintiff's version because a reasonable juror could not credit Plaintiff's version in light of the video evidence. *See, e.g., Glassberg v. Staples the Office Superstore E., Inc.*, No. 08-CV-2132 (KAM)(JMA), 2010 WL 3924682, at *4 (E.D.N.Y. Sept. 13, 2010), *report and recommendation adopted*, 2010 WL 3909206 (E.D.N.Y. Sept. 29, 2010) (noting that in ruling on a summary judgment motion, the court "is compelled to credit [surveillance footage] over the plaintiff's recollection") (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

10:00 p.m. (Uszynski Aff. at ¶ 5). After the examination, a correction officer escorted Plaintiff out of the hallway. (Def. Ex. N). As Plaintiff walked away, the video shows that the dressing on Plaintiff's neck is clearly visible and still intact. (*Id.*).

Following their interaction in the hallway, Defendant updated Plaintiff's medical chart with the treatment that she provided to Plaintiff. (Def. Ex. J at 17–18); (Uszynski Aff. at ¶ 7). Defendant also included Doctor Roth's discharge instructions in Plaintiff's medical chart. (*Id.*). Specifically, Defendant noted that Plaintiff should receive pain relievers every 8 hours for 24 hours, Bactrim and Bacitracin administered twice a day, and no showering for 48 hours. (*Id.*). Defendant's medical notes also indicate that Plaintiff was scheduled for suture removal in fourteen days and a surgical follow up appointment. (Def. Ex. J at 17–18). Defendant did not encounter Plaintiff again for several months thereafter. (Whittle Dep. at 46); (Uszynski Aff. at ¶ 10); (Pl. Ex. E at 19).

Plaintiff's medical records indicate that on December 14, 2014, medical personnel cleaned the surgery site with saline, applied dry dressing, and administered Bactrim and Doxycycline to Plaintiff.[9] (Def. Ex. J at 29–30); (Whittle Dep. at 44–45). On December 18, 2014, Doctor Ulloa, who was the Medical Director at WCJ, examined Plaintiff's neck and noted that the sutures were in place with no erythema. (Ulloa Aff. at ¶¶ 2–3, 8). Doctor Ulloa also noted that Doctor Roth's discharge instructions remained in place. (*Id.* at ¶ 8). The medical records indicate that on December 26, 2014, the sutures were removed, that the suture line healed, and there was no bleeding at the surgery site. (Pl. Ex. E at 8). Thereafter, on January 3,

---

[9] Plaintiff contends that he did not receive a full dressing change on December 14, 2014, maintaining that medical personnel failed to clean the area with saline or apply topical gel. (Whittle Dep. at 45). Plaintiff's medical records, however, directly contradict this contention. (Def. Ex. J at 29–30). "[W]here undisputed medical records *directly and irrefutably* contradict a plaintiff's description of his injuries, no reasonable jury could credit plaintiff's account of the happening." *Davis v. Klein*, No. 11-CV-4868(ENV), 2013 WL 5780475, at *4 (E.D.N.Y. Oct. 25, 2013) (emphasis in original).

5

2015, Plaintiff returned to the medical unit due to a "dehiscence," or opening, of the wound at the suture site on the left side of his neck. (Pl. Ex. E at 5); (Ulloa Aff. at ¶ 9). On January 5, 2015, Doctor Ulloa examined the dehiscence and observed that the wound opened horizontally, but that it was clean with no discharge or blood. (Pl. Ex. E at 6); (Ulloa Aff. at ¶ 9). Following his examination, Doctor Ulloa ordered that Plaintiff receive treatment for the dehiscence, and that Plaintiff follow up with Doctor Roth. (*Id.*).

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583(LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (internal quotation and citation omitted).[10]

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the

---

[10] In accordance with *Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009) and Local Civil Rule 7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, a copy of this case and any others cited herein, only available by electronic database, accompany this Opinion and Order and shall be simultaneously delivered to the *pro se* Plaintiff.

6

moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150–51 (2000). That said, the Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the moving party meets this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Id.* "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249–50), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

Parties moving for and opposing summary judgment in the Southern District of New York must also submit short and concise statements of facts, supported by evidence that would be admissible at trial. Local Civ. R. 56.1. The opposing party must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."). However, uncontested facts cannot be deemed true simply by virtue of their assertion in a Local

Rule 56.1 statement; the Court is free to disregard the assertion in the absence of citations or where the cited materials do not support the factual assertions in the statements. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). The Court therefore has discretion "to conduct an assiduous review of the record" even where one of the parties has failed to file such a statement. *Id.*; *see also* Fed. R. Civ. P. 56(c)(3). Nevertheless, the Court is "not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (internal quotation marks and citation omitted).

**B. Standard for Deliberate Indifference Claims Under the Fourteenth Amendment**

A pre-trial detainee's claim for deliberate indifference to serious medical needs is evaluated under the Due Process Clause of the Fourteenth Amendment. *Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017) (citing *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). "[W]hen a claim arises under the Fourteenth Amendment, 'the pre-trial detainee must prove that the defendant-official acted intentionally . . . or recklessly failed to act with reasonable care . . . even though the defendant-official knew, or should have known that the condition posed an excessive risk to health or safety.'" *Ryan v. Cty. of Nassau*, No. 12-CV-5343(JS)(SIL), 2018 WL 354684, at *3 (E.D.N.Y. Jan. 10, 2018) (quoting *Darnell*, 849 F.3d at 35). To establish a claim for deliberate indifference to serious medical needs under the Fourteenth Amendment, a plaintiff must satisfy both objective and *mens rea* components. *Davis*, 283 F. Supp. 3d at 116.

The objective standard has two prongs. "The first prong is whether the prisoner was actually denied adequate medical care." *James v. Correct Care Sols.*, No. 13-CV-0019(NSR), 2013 WL 5730176, at *4 (S.D.N.Y. Oct. 21, 2013) (citing *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir.2006)); *see Valdiviezo v. Boyer*, No. 17-1093, 2018 WL 5096345, at *2 (2d Cir. Oct. 18, 2018) (noting that "[f]or Fourteenth Amendment claims, this Court applies the same standard as the Eighth Amendment to determine whether an alleged action is objectively serious enough

to be a constitutional violation.") (summary order). The second prong of the objective standard is "whether the 'medical condition is sufficiently serious.'" *Figueroa v. Cty. of Rockland*, No. 16-CV-6519 (NSR), 2018 WL 3315735, at *5 (S.D.N.Y. July 5, 2018) (quoting *Salahuddin*, 467 F.3d at 280). To establish that the medical condition was sufficiently serious, a plaintiff must show "the existence of 'a condition of urgency, one that may produce death, degeneration, or extreme pain[.]'" *Id.* at *4 (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). However, "where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower . . . [and] the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Salahuddin*, 467 F.3d at 280 (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003).

In *Darnell v. Pineiro*, the Second Circuit modified the *mens rea* component for deliberate indifference claims brought under the Fourteenth Amendment. 849 F.3d at 35; *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 718 (S.D.N.Y. 2017) ("[t]he reasoning of *Darnell* applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment."). Since *Darnell*, courts must determine "whether an objectively reasonable person in Defendant's position would have known, or should have known, that Defendant's actions or omissions posed an excessive risk of harm to [Plaintiff]." *Davis*, 283 F. Supp. 3d at 120 (citing *Darnell*, 849 F.3d at 35; *Lloyd*, 246 F. Supp. 3d at 719). "In other words, the second element of a deliberate indifference claim under the Fourteenth Amendment 'is defined objectively,' and a plaintiff is not required to show subjective awareness by the defendant that '[his] acts (or omissions) have subjected the pre-trial detainee to a substantial risk of harm.'" *Ryan*, 2018 WL 354684, at *3 (quoting *Darnell*, 849 F.3d at 35) (alteration in original). Nevertheless, "[a]

9

detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Darnell*, 849 F.3d at 36.

## III. DISCUSSION

Plaintiff in the instant matter alleges two theories of liability against Defendant. First, Plaintiff claims Defendant removed the post-surgical dressing from Plaintiff's neck when she examined him on December 12, 2014. (Am. Compl. at 8–9). Second, Plaintiff appears to argue that Defendant altered Doctor Roth's post-surgery treatment plan, which prevented Plaintiff from received proper dressing changes for weeks. (Pl. Br. and 56.1 Resp. at 5, 7).

### A. Post-Operative Dressing

Plaintiff's claim premised on his first theory of liability fails under the objective test of the deliberate indifference analysis because the evidence demonstrates that Defendant did not, in fact, remove the post-operative dressing from Plaintiff's neck on December 12, 2014. The first prong of the objective test requires that Plaintiff establish that he "was actually denied adequate medical care." *James*, 2013 WL 5730176, at *4 (citing *Salahuddin*, 467 F.3d at 279). In the instant case, video surveillance reveals that Defendant did not remove Plaintiff's dressing on any of the three occasions Defendant approached Plaintiff while he was seated in the hallway of the medical unit. (Ex. N). Rather, Defendant complied with Doctor Roth's discharge instructions to leave the dressing intact for 24 hours following surgery. (Def. Ex. J at 7). In fact, the video surveillance shows that the dressing on Plaintiff's neck is clearly intact as he exited the hallway of the medical unit following his interaction with Defendant. (Ex. N). Additionally, Plaintiff fails to offer any evidence supporting his contention other than his own self-serving deposition testimony. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007) (holding that video evidence may be credited over non-movant's account if the video "blatantly contradicts" the non-movant's version of events). Furthermore, Plaintiff admits that he had no other pertinent interactions with

Defendant after December 12, 2014. (Whittle Dep. at 46). Accordingly, Defendant is entitled to summary judgment on Plaintiff's first theory of deliberate indifference because no rational jury could conclude, based on the video evidence, that Defendant removed the post-surgical dressing from Plaintiff's neck on December 12, 2014.

**B. Post-Operative Treatment Plan**

Plaintiff also argues that Defendant was deliberately indifferent when she failed to include a portion of Doctor Roth's discharge instructions in Plaintiff's medical chart, which allegedly prevented Plaintiff from receiving new dressing on his neck for approximately twenty-two days. (Pl. Br. and 56.1 Resp. at 4-5). In other words, Plaintiff maintains that Defendant's omission led to an unreasonable delay in receiving dressing changes. While the need for repeated dressing changes may constitute a serious medical need, *see Nelson v. Warren*, No. 10-CV-990 (GTS)(DRH), 2011 WL 7445581, at *3 (N.D.N.Y. Dec. 12, 2011), *report and recommendation adopted*, 2012 WL 685755 (N.D.N.Y. Mar. 2, 2012), Defendant's alleged omission does not rise to a level sufficient to satisfy the second prong of the objective inquiry under the facts herein. Defendant noted Doctor Roth's discharge orders in the records and even recommended that medical personnel clean Plaintiff's wound with Bacitracin twice a day rather than once a day. (Def. Ex. J at 18). Defendant also took measures to alleviate Plaintiff's pain and to prevent infection. Defendant's instructions further recommended that medical personnel monitor Plaintiff's post-operative condition for additional treatment, if necessary, on a daily basis. Such actions do not amount to deliberate indifference to his serious medical needs. *See Maldonado v. Wells*, No. 9:12-CV-1290 (LEK)(CFH), 2015 WL 3455215, at *8 (N.D.N.Y. May 28, 2015) (holding that the plaintiff failed to establish deliberate indifference where the defendants "took measures to treat and avoid the harm of the possible infection, including prescribing pain medication, including antibacterial medication, cleaning the wound, keeping

11

plaintiff in the infirmary for days at a time, instructing him on how to treat his wound, scheduling follow-up visits, and re-testing the incision site.").

Furthermore, Plaintiff's medical records and deposition testimony establish that Plaintiff received a dressing change, saline cleaning at the surgery site, and antibiotics at approximately 11:46 a.m. on December 14, 2014—a little over 36 hours after surgery and consistent with Doctor Roth's discharge notes directing the dressing to be changed after 24 hours. (Def. Ex. J at 7); (Whittle Dep. at 44–45). Plaintiff maintains that he did not actually receive a full dressing change or saline cleaning on December 14, 2014. (Whittle Dep. at 45–46). This contention, however, is belied by Plaintiff's medical records. (Def. Ex. J at 29–30); *see Benitez v. Pecenco*, No. 92 Civ. 7670 (DC), 1995 WL 444352, at *7, n. 5 (S.D.N.Y. July 27, 1995) (granting summary judgment where conclusory claim that plaintiff was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue). Consequently, because any delay in treatment was minimal and not sufficiently serious, Defendant is entitled to summary judgment under the objective prong of the two part test. *See Salahuddin*, 467 F.3d at 280.

Assuming *arguendo* that Plaintiff's second theory of liability satisfies the objective prong, the evidence does not support the inference that Defendant acted with the requisite state of mind necessary to establish Plaintiff's claim. Under the *mens rea* component, Plaintiff must show that an objectively reasonable person in Defendant's position "knew, or should have known" that her actions or omissions on December 12, 2014 "posed an excessive risk to [Plaintiff's] health or safety." *Darnell*, 849 F.3d at 35. Here, based upon the evidence in the record, a reasonable jury could not conclude that Defendant knew or should have known that noting Doctor Roth's discharge instructions in Plaintiff's medical chart would delay Plaintiff's

dressing changes. While Plaintiff's medical chart does not affirmatively state that Plaintiff should receive dressing changes, Defendant's notations indicate that Plaintiff should not shower for 48 hours, the surgery site on Plaintiff's neck should be cleaned with Bacitracin twice daily, and Plaintiff should receive both topical and oral antibiotics in conformance with Doctor Roth's discharge instructions. (Def. Ex. J at 17–18). In addition, there is no evidence that any delay in changing Plaintiff's dressing posed an excessive risk to Plaintiff. *See Stewart v. City of New York*, No. 15-CV-4335 (RA), 2018 WL 1633819, at *8 (S.D.N.Y. Mar. 31, 2018) ("Although [plaintiff] allegedly did not have his dressings changed as often as prescribed . . . there is no indication in the Complaint that any Individual Defendant should have known that such delays posed an excessive risk to [plaintiff]."). Moreover, Defendant could not have the requisite state of mind because she ordered daily wound care and pain medication, and had no further contact with Plaintiff after December 12, 2014. *See Lloyd*, 246 F. Supp. at 720 (concluding that a doctor did not act with necessary state of mind in part because he ordered daily wound care and prescribed pain medication, but had no further contact with the plaintiff). Even if the delay in changing Plaintiff's dressing can be imputed to Defendant's alleged omission, "this amounts to negligent conduct at most, and 'negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.'" *Lloyd*, 246 F. Supp. at 720 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). Accordingly, because Defendant's conduct does not establish that she acted with the requisite state of mind necessary to find deliberate indifference, Defendant is entitled to summary judgment on Plaintiff's second theory of liability.

**IV. CONCLUSION**

    For the foregoing reasons, Defendant's motion for summary judgment is granted. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. The Clerk is respectfully requested to terminate the pending Motion, (Docket No. 98), enter judgment for Defendant, and mail a copy of this Opinion and Order to the *pro se* Plaintiff.

Dated:    January 4, 2019
           White Plains, New York

                                                    **SO ORDERED:**

                                            _____
                                            JUDITH C. McCARTHY
                                            United States Magistrate Judge